BRASWELL FUJIOKA-LILLEY LLP
TERRI L. FUJIOKA-LILLEY, 9590
JASON R. BRASWELL, 10632
75-127 Lunapule Road, Ste. 8B
Kailua-Kona, HI 96740
Telephone: (808) 345-7662
terri@bflwlaw.com
jason@bflwlaw.com

KLASKO IMMIGRATION LAW PARTNERS, LLP
H. RONALD KLASKO, PA Bar No. 20384 (Pro Hac Vice to be submitted)
DANIEL B. LUNDY, NY Bar No. 4479747 (Pro Hac Vice to be submitted)
1601 Market Street, Suite 2600
Philadelphia, PA 19103
Telephone: (215) 825-8695
rklasko@klaskolaw.com
dlundy@klaskolaw.com

Attorneys for Plaintiffs
CALIFORNIA ENERGY INVESTMENT CENTER, LLC
and HAWAII AGRICULTURE, ENERGY AND EARTH PRODUCTS, LP

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| CALIFORNIA ENERGY INVESTMENT CENTER, LLC, a California limited liability company, and HAWAII AGRICULTURE, ENERGY AND EARTH PRODUCTS, LP, a Hawaiʻi limited partnership,<br><br>    Plaintiffs<br><br>    v.<br><br>CHAD WOLF, in his capacity as<br>*(caption continues)* | No._____<br><br>Agency No. RCW1624454398<br><br>**PLAINTIFFS' COMPLAINT FOR WRIT IN THE NATURE OF MANDAMUS** |

Acting Secretary of the U.S.
Department of Homeland Security;
KENNETH CUCCINELLI, in his
capacity as Acting Director of United
States Citizenship and Immigration
Services; SARAH KENDALL, in her
capacity as Chief of the Immigrant
Investor Program Office, United States
Citizenship and Immigration Services;
and UNITED STATES CITIZENSHIP
AND IMMIGRATION SERVICES,

                    Defendants.

## PLAINTIFFS' COMPLAINT
## FOR WRIT IN THE NATURE OF MANDAMUS

Plaintiffs CALIFORNIA ENERGY INVESTMENT CENTER, LLC and

HAWAII AGRICULTURE, ENERGY AND EARTH PRODUCTS, LP complain

of Defendants CHAD WOLF, in his capacity as Acting Secretary of the U.S.

Department of Homeland Security; KENNETH CUCCINELLI, in his capacity as

Acting Director of United States Citizenship and Immigration Services; SARAH

KENDALL, in her capacity as Chief of the Immigrant Investor Program Office,

United States Citizenship and Immigration Services; and UNITED STATES

CITIZENSHIP AND IMMIGRATION SERVICES as follows:

### INTRODUCTION

1.     Plaintiff California Energy Investment Center, LLC ("CEIC" or

"Regional Center") is a U.S. company that was designated an approved regional

center by Defendant United States Citizenship and Immigration Services ("USCIS") on August 12, 2009. The mission of a regional center is to sponsor investment opportunities for foreign investors who invest at least $500,000 ($900,000 as of November 21, 2019) each into a new commercial enterprise in the U.S. for the purpose of making a qualifying investment. 8 U.S.C. § 203(b)(5) (commonly referred to as the EB-5 visa category or EB-5 program) allows a foreign investor who makes a qualifying investment into a U.S. company, which investment results in the creation of at least ten jobs for U.S. workers, to qualify for an immigrant visa and subsequent lawful permanent resident status in the U.S. (i.e. a "green card"). The CEIC is a highly experienced regional center in good standing, with approved projects in California and Nevada. Projects under its auspices have resulted in investments by more than 700 investors, and have brought a significant amount of capital investment and thousands of jobs to areas of high unemployment (known as targeted employment areas) in keeping with the purposes of the EB-5 program.

2.     Plaintiff CEIC is the regional center sponsor of Plaintiff Hawaii Agriculture, Energy and Earth Products, LP ("HAEEP", also the "new commercial enterprise", or "NCE") for the purposes of the EB-5 program. The purpose of the NCE is to provide funding, derived from foreign investment under the EB-5 program, to a job creating project; in this instance, the acquisition, construction and

operation of dairies, and the production of organic dairy and soil products in Honoka'a, Hawai'i (the "Project").  CEIC leadership (which has direct experience in both agriculture and as principal consultant to many other approved EB-5 projects of an agricultural nature) worked directly with project principals, local Hawai'i officials, and various experts for several years as the Project has been deemed as crucial to food security in Hawai'i and is expected to create more than 1,155 new jobs for U.S. workers as a result of the investment.

3.     The Regional Center filed an I-924 Application for Regional Center Designation ("Application") to amend its designation to include the Project as an approved project on August 31, 2016.  USCIS delayed adjudication of the Application for over four years to the detriment of the Regional Center and the Project.  The delay has been harmful to the goals of the EB-5 program, specifically, promoting domestic job creation through the promotion of foreign investment into the U.S.

4.     On July 17, 2020, Defendant USCIS denied the I-924 Application for failing to meet a requirement not included in the relevant statute, regulations or Defendants' Policy Manual.

5.     This action is brought against the Defendants for declaratory judgment and review of an agency action under the Administrative Procedure Act based on the Defendants' unlawful denial of Plaintiff CEIC's Form I-924 Application for

Regional Center Designation filed by Plaintiff to expand the geographical jurisdiction of the regional center to include the State of Hawai'i.

6.      Defendant USCIS arbitrarily and capriciously found that CEIC's I-924 Application did not meet the statutory and regulatory criteria.

7.      Contrary to Defendants' decision, Plaintiff CEIC provided sufficient evidence documenting that Hawai'i is in the same economic region as Plaintiff's already approved geographical region within the State of California.

8.      Defendants' findings are not supported by substantial evidence, constitute an error of law, and are contradicted by the evidence on record.

## PARTIES

9.      Plaintiff California Energy Investment Center, LLC, is a California LLC with offices at 20400 Stevens Creek Blvd, Suite 700, Cupertino, CA 95014.  The Regional Center was designated under the EB-5 program as a USCIS approved regional center on August 12, 2009 and filed the I-924 Application in question with Defendants on August 31, 2016.

10.     Plaintiff Hawaii Agriculture, Energy and Earth Products, LP was formed to pool $25 million from 50 immigrant investors for the construction of solar barns, energy, water recovery and other facilities for production, marketing, and sale of organic dairy products and compost on the Big Island of Hawai'i.   The dairies

represent the two remaining dairies in Hawaiʻi; there is presently no major soil amendments production in Hawaiʻi.

11.   Defendant Chad Wolf, is the Acting Secretary of the United States Department of Homeland Security with responsibility for the administration of applicable laws and statutes governing immigration and naturalization. He is generally charged with enforcement of the Immigration and Nationality Act and is further authorized to delegate such powers and authority to subordinate employees of the Department of Homeland Security. More specifically, the Secretary is responsible for the adjudication of applications to amend regional center designations and petitions for alien entrepreneurs. [1]

12.   Defendant Kenneth Cuccinelli, is the Senior Official performing the duties of the Director of USCIS, and is responsible for the administration of immigration and naturalization adjudication functions and establishing immigration services policies and priorities. These functions include: adjudication of immigrant visa petitions and applications for adjustment of status; adjudication of naturalization petitions; adjudication of asylum and refugee applications; adjudications of I-924

---

[1] The GAO released a report on August 20, 2020 finding that Defendants Wolf and Cuccinelli were not properly appointed to their positions and are ineligible to serve in those positions. Multiple federal courts have agreed and had invalidated actions taken by those Defendants.

Applications for Regional Center Designation; adjudications performed at the service centers; and all other adjudications performed by USCIS. [1]

13.     Defendant, Sarah Kendall, is the Chief of the USCIS Immigrant Investor Program Office, which is directly charged with responsibility for processing applications and petitions under the EB-5 program, and specifically applications to amend regional center designations and petitions for alien entrepreneurs.

14.     Defendant, U.S. Citizenship and Immigration Services ("USCIS") (formerly, the Immigration and Naturalization Service) is an agency of the federal government within the Department of Homeland Security (formerly, within the U.S. Department of Justice) and is responsible for the administration of laws and statutes governing immigration and naturalization.

## JURISDICTION AND VENUE

15.     Jurisdiction in this case is proper under 28 U.S.C. § 1331, 5 U.S.C. §§ 701 and 702 *et. seq.*, and 28 U.S.C. § 2201 *et. seq.*  Relief is requested pursuant to said statutes.   Specifically, this Court has jurisdiction over the present action pursuant to 28 U.S.C. § 1331, which provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  Further, the Declaratory Judgment Act, 28 U.S.C. § 2201, provides that: "[i]n a case of actual controversy within its jurisdiction... any court of the

United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Review is also warranted and relief sought under the Administrative Procedure Act 5 U.S.C. §§ 701, 702 et seq., and § 706(1), pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

16.     Venue properly lies within the District Court for Hawai'i pursuant to 28 U.S.C.§1391(e) in that Plaintiff HAEEP is located in Hawai'i, Defendant USCIS has an office in Hawai'i, the subject matter of this lawsuit involves an EB-5 regional center project located in Hawai'i and the legal issue involved in this lawsuit is whether the jurisdiction of an existing EB-5 regional center should be extended to include Hawai'i.

## EQUAL ACCESS TO JUSTICE ACT

17.     Under the Equal Access to Justice Act, 28 U.S.C. §2412, Plaintiffs seek to recover costs and attorneys' fees incurred in bringing this action.  Plaintiffs have retained the law firms of Klasko Immigration Law Partners, LLP and Braswell Fujioka-Lilley LLP to represent it in this action.  Plaintiffs are obligated to pay reasonable attorneys' fees and costs incurred in the prosecution of this cause.

## EXHAUSTION OF REMEDIES

18.     Plaintiffs have exhausted their administrative remedies, and the denial of the I-924 Application constitutes final agency action.

## BACKGROUND ON THE EB-5 PROGRAM

19.    In 1990, Congress amended the Immigration and Nationality Act of 1965, allocating, inter alia, 10,000 immigrant visas per year to foreign nationals seeking Lawful Permanent Resident ("LPR") status on the basis of their capital investments in the United States.  See generally the Immigration Act of 1990, Pub. L. No. 101-649, § 121(b)(5), 104 Stat. 4978 (1990) (codified at 8 U.S.C. § 1153(b)(5)).  Pursuant to the so-called "Immigrant Investor Program," foreign nationals may be eligible for an employment-based, fifth preference ("EB-5") immigrant visa if they have invested, or are actively in the process of investing, $1 million (or $500,000 in a high unemployment or rural area) (now $1.8 million or $900,000 as a result of USCIS amendments to the regulations taking effect on November 21, 2019) in a qualifying New Commercial Enterprise ("NCE"), and that investment results in the creation of at least ten jobs for U.S. workers.  See 8 U.S.C. § 1153(b)(5)(A)-(D); see also 8 C.F.R § 204.6(a)-(j). The EB-5 regulations further provide that, in order to qualify as an "investment" in the EB-5 Program, foreign nationals must actually place their capital "at risk" for the purpose of generating a return, and that the mere intent to invest is not sufficient.  See 8 C.F.R. § 204.6(j)(2).  The purpose of this program was to promote foreign direct investment into, and job creation within, the U.S.

20.    In 1993, Congress created the Immigrant Investor Pilot Program ("Pilot Program") through the enactment of various provisions of section 610 of the Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriation Act.  See Pub. L. No. 102-395, § 601, 106 Stat. 1828, 1874 (1992).  The Pilot Program allows foreign investors who invest in NCEs affiliated with USCIS (formerly INS) designated regional centers to meet the 10-jobs-per investor by counting indirect jobs- i.e. jobs that are created outside of the NCE.  Further, in addition to not being restricted to only counting employees of the NCE, investors under the Pilot Program are allowed to use any valid statistical forecasting model to demonstrate job creation.  *See* § 601(a)-(c) of Pub. L. No. 102-395; *see also* 8 C.F.R. § 204.6(e), (j)(4)(iii), (m)(7)(ii).  The intent of these reforms was, again, to incentivize and promote foreign investment into, and job creation within, the U.S.

21.    Regional center investment projects typically use an economic model, such as the RIMS II Input/Output model, a U.S. government created model, for projecting the job creation resulting from EB-5 investment into a given project.  Input/Output models are based on multipliers derived from vast amounts of government data.  For every unit of input, the multiplier is applied to derive a number of units of output.  For instance, most common in the EB-5 program is the use of construction expenditures as an input.  For every $1 million of construction

expenditures, *X* number of jobs are created (the multiplier varies by region, but typically there are 10-12 jobs per $1 million of construction expenditures).  The ability to count indirect jobs and use an economic model allows EB-5 funds to be used for types of development projects that would not ordinarily qualify under the non-regional center program due to its requirement of counting only employees of the NCE.  Another result of the Pilot Program is that regional centers can aggregate investments from a large number of EB-5 investors in order to finance larger scale projects.

22.    In order to become an LPR through both the standard and regional center-model program, a foreign national must initially file with USCIS a Form I-526, Immigrant Petition by Alien Entrepreneur, which, if approved, makes the foreign national eligible to receive an employment-based, fifth preference immigrant visa, *see generally* 8 U.S.C. § 1153(b)(5).  Upon approval of the I-526 Petition, the foreign national must file a Form I-485, Application to Adjust Status (if he or she is located in the United States), or a Form DS-260, Application for Immigrant Visa and Alien Registration (if he or she is located outside the United States). *See generally* 8 U.S.C. § 1201 (provisions relating to the issuance of entry documents); 8 U.S.C. § 1255 (provisions relating to adjustment of status).  Upon adjustment of status or admission on an EB-5 immigrant visa, the foreign national is granted two-years of conditional permanent resident status, provided that the foreign national is not

otherwise ineligible for admission into the United States. *See generally* 8 U.S.C. § 1182 (provisions relating to excludable aliens). Finally, at the conclusion of the two-year conditional period, the foreign national must file a Form I-829, Petition to Remove the Conditions on his or her LPR status. If the foreign national has fulfilled the EB-5 requirements- i.e. has invested, maintained the investment at risk, and the investment has resulted in the creation of at least ten jobs for U.S workers- then the conditions will be removed and the foreign national will be an unconditional LPR. *See generally* 8 U.S.C. § 1186b (provisions relating to conditional permanent resident status for certain alien entrepreneurs, spouses, and children).

23. An EB-5 investor must maintain his or her investment at risk until the end of the two-year conditional residence period. This period does not begin to run until the investor enters the U.S. with an EB-5 visa or is granted an Adjustment of Status by USCIS while in the U.S.

24. USCIS approves regional centers for a specific geographical area. Each regional center investment project must be sponsored by a regional center with geographical jurisdiction over the project. Regional centers may apply to extend their geographical boundaries to include the geographical area of a particular project by filing Form I-924 Application for Regional Center Designation. Pursuant to regulation and USCIS policy, the application must include evidence that the

requested geographical area is limited to a particular geographic or economic region and will promote the economy of the region, including the supply chain.

25.     A regional center cannot sponsor a project in an area outside of its territory until USCIS approves an amendment to that territory, which project must be in the same geographic or economic region by regulation and USCIS policy.

### CASE HISTORY

26.     Plaintiff, California Energy Investment Center, LLC, was designated under the EB-5 program as a USCIS approved regional center on August 12, 2009 with authority to sponsor EB-5 investments in counties in California.

27.     Plaintiff CEIC caused the formation of Hawaii Agriculture, Energy and Earth Products, LP, which would serve as the EB-5 investment vehicle for foreign investors seeking to invest in the Project and obtain an EB-5 visa (and subsequent conditional, then unconditional, lawful permanent residence in the U.S.).

28.     The NCE was formed to raise up to $25 million from 50 foreign investors through the EB-5 program, and loan that money to the developer of the Project, which includes: the acquisition, construction, and operation of the two remaining dairies located in O'okala, Hawai'i, and Hawi, Hawai'i; construction of solar barns and energy and water recovery facilities; extraction and processing of the highly enriched soil from the Haina Mill site (soil amendments which reduce water consumption in agricultural production and greatly enhance crop yields thus further

reducing energy consumption); and developing root and feedstocks and using animal wastes.

29.     On August 31, 2016, the Regional Center filed with Defendant an I-924 Application to amend its designation to expand its territory to cover Hawaiʻi and to include an Exemplar I-526 (the "Exemplar") for approval of the Project (Receipt Number RCW1624454398).[2]   The island of Hawaiʻi is in its entirety a rural county and a designated targeted employment area. Throughout its history, virtually all of the CEIC projects are in rural counties with high unemployment.

30.     Plaintiff HAEEP is in the "zone of interests" of the I-924 Application and is the subject NCE of the Application.

31.     For more than 15 months from the submission of the Application, the Plaintiff heard nothing on the Application until Defendants issued a Request for Evidence ("RFE") on December 15, 2017.

---

[2] The Exemplar application is used to obtain USCIS approval of the project-related portions of an EB-5 investor petition, such that in each subsequent investor filing, USCIS will give deference to the approval of the Exemplar application, and not separately re-adjudicate the project-related portions of the investor filing. This is intended to promote consistency among adjudications and prevent situations where different adjudicators reach inconsistent results on identical facts (historically a problem with USCIS in general and with USCIS EB-5 adjudications specifically), and to promote efficiency at USCIS whereby each EB-5 project is adjudicated only once, instead of again and again with each investor filing. Thus, there is a considerable benefit to having an approved exemplar, especially when it comes to recruiting investors.

32.     The RFE raised no issues about the Project's approximately 500 pages of documentation, including the business and financial modeling, the technical aspects of the project attendant to dairy and soil amendment production, the job creation study and attendant employment creation and regional economic benefits (including increases in personal and household income and spending, contributions to local tax base, and the like), the expertise of management to properly execute the project, or the offering documents.  It only raised a single issue with respect to the expansion of the Regional Center's territory; viz., that the proposed geographical region is not "contiguous".

33.     On March 9, 2018, Plaintiffs filed a response to the RFE.

34.     The response included a request to add Los Angeles County, in California, to the Regional Center's territory; argued that the statute and regulations contain no requirement that the territory be contiguous; argued that California and the Central Valley of California where the CEIC is based is the largest dairy producer in the U.S. and offers considerable expertise to Hawaiʻi which can assist the Project in production and can help reduce Hawaiʻi's dependence on food imports and dairy product pricing; argued that the State of Hawaiʻi has recognized the importance of the HAEE project by passing a $50 million bond for the exclusive use of the Project;  and argued that because California is the closest state to Hawaiʻi and shares

economic ties with Hawaiʻi, the Regional Center should be allowed to expand its territory to include Hawaiʻi.

35.   The response was supported by an economic report and numerous documents and statistical evidence.  It should be noted that support for the arguments presented by the CEIC was provided by Kim Atteberry, former Chief Economist of the USCIS.

36.   Although the State of Hawaiʻi had passed the special purpose bond in support of the Project in June 2017, and the response to the RFE was filed on March 9, 2018, the Defendants did not adjudicate the Application for more than two years after the RFE response was filed.  The delays were inordinate and run directly counter to the spirit and intent of various Executive Orders issued over the last several years in support of speedy administrative review and giving priority to rural projects (the entirety of the Big Island of Hawaiʻi is a designated rural county).

37.   Defendant USCIS denied the I-924 Application on July 17, 2020.

38.   Defendant's denial of the I-924 Application was based solely on a finding that the geographical area of the Regional Center should not be extended to cover the Project in Hawaiʻi.

39.   Defendants' delay and then denial of Plaintiff's I-924 Application render it essentially impossible to raise EB-5 money for this project because no

investors can file I-526 petitions for EB-5 visas on the basis on an investment in the Project until the Regional Center's geographical amendment is approved.

## FACTUAL ALLEGATIONS

40.     According to the Economic Impact Report submitted with Plaintiff CEICs Application, the EB-5 investment in the Project will result in the creation of more than 1,155 new, permanent jobs for U.S. workers.  As such, the Project more than meets the 10-jobs-per-investor requirement of the EB-5 program for the number of investors sought and has a significant economic impact to the local economy.   Hawai'i County is highly dependent on tourism; the HAEEP project will help diversify the economy; assist in stabilizing the local economy which has forced many residents to relocate due to lack of job opportunities; and enhance household income, local spending, and the tax base.

41.     CEIC has provided extensive documentation to evidence how its sponsorship of the Project will promote growth, improve regional productivity, create jobs and increase domestic capital investment.

42.     CEIC has been involved with the planning and preparation of the HAEEP Project for several years. This process has involved working with top experts brought from California to Hawai'i to understand the industries and the local social and economic conditions. The leading topsoil expert in the world continues to work on site. CEIC principals undertook several extended trips to the Project sites

and invested much time and money to fully understand the regional economic conditions and to help build the business and job creation models.

43.    Collaboration between CEIC and HAEEP was a critical part of Hawaiʻi's support of a $50 million special purpose bond signed into law by the Governor of Hawaiʻi to help fund the Project.

44.    Food product costs in Hawaiʻi are high because more than 90% of Hawaiʻi's food is imported.  Specifically, since nearly all dairy products in the State are imported, the price of milk and other dairy products is significantly higher in Hawaiʻi than it is in the rest of the country. At the time the Application was filed, there were only two active dairies in Hawaiʻi, which are the two dairies that HAEEP is attempting to save.  The Project is expected to have a positive impact on the food security of the State, and on the nutrition of its inhabitants.  There are significant social and economic benefits derived from the Project, and the Project has outstanding community support.

45.    Over 87% of Hawaiʻi's milk must be imported from mainland US, mostly from California.

46.    Without continuous imports of food and milk products, Hawaiʻi could only feed its population for 10 days.

47.    The State of Hawaiʻi Department of Agriculture states that "collaborative efforts between     Hawaii and California are essential to the Hawaiian

economy and food security". It notes that the Central Valley of California (including the counties encompassed by the plaintiff) is "integral to the food supply" of Hawai'i.

48.     The State of Hawai'i Department of Agriculture states that "Hawaii today has a deep dependence on California for its fluid milk distributed in Hawaii…."

49.     The counties within the geographical boundaries of the Plaintiff Regional Center constitute most of the top 10 milk production counties in California.

50.     The continental US, and especially California, contributes a significant number of workers to the labor pool of Hawai'i.

51.     The US Department of Agriculture Economic Research Service classifies California and Hawai'i in the same region for milk production.

52.     California is indisputably a huge component of Hawai'i's food supply chain.

53.     The Pacific Ocean is an integral part of the supply chain of Hawai'i and acts as, in effect, a highway between California and Hawai'i.

54.     California is the closest state to Hawai'i geographically.

55.     If Plaintiff CEIC cannot add Hawai'i to its territory, the only way it could sponsor the project is if it were to apply for the designation of a brand new

regional center by filing an I-924 with Defendants and waiting years for Defendants to act on that application.

56.    Approval of such an application is, of course, not guaranteed.

## LEGAL ISSUES

57.    The law governing the geographic area of an EB-5 regional center is limited by a statutory provision and a regulatory provision.

58.    The statutory provision makes no specific reference to a requirement that a regional center be limited to a geographic or economic region of the US. It does require that a regional center promote economic growth, which may include "improved regional productivity." Section 610 of Departments of Commerce, Justice, and State, the Judiciary and Related Agencies Appropriations Act, 1993, Pub. L. No. 102-395, 106 Stat. 1828 (1992).

59.    The relevant regulation, 8 C.F.R. 204.6(m)(3), adds the requirement that a regional center must focus on a geographic region of the US and have a positive impact on either the regional or national economy.

60.    Neither the statute nor the regulation imposes any other requirement regarding the geographic scope of a regional center's boundaries.

61.    The USCIS policy on this subject that was in effect at the time of the filing of the I-924 Application that is the subject of this litigation was set forth in a USCIS Policy Memorandum dated May 30, 2013. The Policy Memorandum

reiterates the regulatory requirement of promoting economic growth in the proposed geographic area of the regional center. There is no mention of a contiguity requirement.

62.     Both the law and the published USCIS policy are consistent in requiring promotion of economic growth in a geographic region of the US and in not requiring that the region be contiguous. The Decision is consistent with the legal requirements in stating: "USCIS deems geographic boundaries acceptable if the Regional Center can establish by a preponderance of the evidence that the proposed economic activity will promote economic growth in the proposed area."

63.     When the regulation requires an approved regional center to "focus on a geographic region of the U.S.", it does not do so in a vacuum. Geographic regions of the United States have been defined by the federal government for many purposes and have consistently included California and Hawai'i in the same "geographic" and "economic" region. The Office of Management and Budget established ten standard federal regions to be applied by all executive branch agencies. California and Hawai'i are in the same federal region, Region IX. The Bureau of Economic Analysis defines regions for comparison of economic data. California and Hawai'i are in the same economic region. The Federal Reserve Bank divides the country into twelve districts for banking purposes. California and Hawai'i are in District 12. Other federal government agencies that divide the country into regions consistently

include California and Hawaiʻi in the same region. e.g., United States Census Bureau; Bureau of Labor Statistics; Department of Labor OSHA; Department of Health and Human Services.

64.     Contrary to the requirements set out in the statute and the regulations, and USCIS policy memoranda, USCIS denied the present I-924 Application for a reason inconsistent with the legal requirements; viz., that the proposed economic region is not "contiguous".

65.     USCIS' denial of the I-924 Application is incorrect both factually and legally and inconsistent with USCIS adjudications and statutory and regulatory intent.

66.     Defendant USCIS has approved regional center sponsorship of many projects in geographical areas not contiguous to the regional center's previously approved geographical boundaries, including applications by Plaintiff CEIC.

67.     One reason given for the denial of the I-924 Application is that the Regional Center requested that its geographic area include the Pacific Ocean, which is not part of the "United States" as defined in the Immigration and Nationality Act. It is not correct that the Regional Center proposal sought to include the Pacific Ocean as part of the geographic region of the Regional Center.

68.    The second reason given for the denial of the petition is that California and Hawai'i are not contiguous. As stated above, contiguity is not a requirement of the statute or regulations.

69.    USCIS nowhere defines its extra-legal requirement that the geographic area of a regional center must be "contiguous." However, without defining "contiguous", it states in its Decision that Hawai'i and California are not contiguous because they are separated by a body of water.

70.    The USCIS interpretation of a "geographic region" or "economic region" as requiring contiguity clearly discriminates against Hawai'i without any indication that Congress intended this discriminatory impact.

71.    The concept that a regional center cannot be approved if it includes bodies of land separated by bodies of water has not been applied to other regional center adjudications. In fact, USCIS has approved many regional centers that include bodies of land separated by bodies of water. Examples include multiple regional centers approved covering all of the Hawaiian islands (each of which is separated by a large body of water), regional centers approved for multiple islands in the US Virgin Islands (each of which is separated by a body of water) and regional centers approved for the Northern Marianas Islands (each of which island is separated by a body of water).

72.    Even if "contiguous territory" were a legal requirement for a regional center's geographic boundaries, "contiguous territory" has been defined by the U.S. Department of Homeland Security.  Tens of thousands of Canadian islands and approximately 100 islands that belong to Mexico are considered to be contiguous to the U.S., despite the fact that they are separated by bodies of water from the mainlands of Canada and Mexico. *See* 22 C.F.R.41.112(d)(2)(ii).

73.    Although Defendant USCIS does not define "contiguous" in its Decision or any statute or regulation, California and Hawaiʻi should be considered "contiguous" for this purpose.

74.    USCIS amended its EB-5 regulations effective November 21, 2019. Among other things, the amendment specifically requires "contiguous census tracts" for determination of a targeted employment area. 8 C.F.R. 204.6(i). The amended regulation does not include a "contiguous" geographical requirement for determining the geographical boundaries of a regional center. 8 C.F.R.204.6(m)(3)(i).

75.    In the preamble to the proposed EB-5 regulation, USCIS provides an example of how it determines "contiguous census tracts". The example given includes census tracts separated by a "waterway". 82 FR 4748.

76.     Upon information and belief, USCIS has regularly approved targeted employment area certifications based on "contiguous" census tracts separated by rivers and other bodies of water.

77.     If Plaintiff CEIC cannot add Hawaiʻi to its territory, the only way it could sponsor the Project is if it were to apply for the designation of a brand new regional center by filing Form I-924 with Defendants, together with a filing fee of $17,795, and waiting many years[3] for Defendants to act on that Application.

## CLAIMS

78.     The factual allegations contained in paragraphs 1 through 77 are repeated and incorporated herein.

79.     The denial of Plaintiff CEIC's Form I-924 Application is a final agency action under the APA.

80.     Plaintiffs have suffered a legal wrong and have been harmed by the denial of the I-924 Application and the consequent inability of Plaintiff CEIC to sponsor Plaintiff HAEEP's project.

81.     Plaintiffs have standing to bring this action pursuant to 5 U.S.C.§702.

82.     Relief is available to Plaintiffs pursuant to the APA and 28 U.S.C.§2201.

---

[3] Defendants took more than four years to adjudicate Plaintiff's I-924 Application.

83. Defendants' denial of Plaintiff CEIC's Application, which is fully compliant with both the letter and the intent of the statute and regulations, is arbitrary and capricious, not supported by substantial evidence, and contrary to the evidence on record.

84. Defendants' decision is incorrect as a matter of law and applies a legal standard not found within the statute or regulations, and is even contrary to USCIS policy in effect on the date of filing of the I-924 Application.

85. The evidence filed with Plaintiff CEIC's I-924 Application establishes that the geographical expansion requested by Plaintiff is within the same economic region as its presently approved jurisdiction.

86. The imposition of a requirement that the geographical area of a regional center that meets the statutory and regulatory requirements must also be "contiguous" is ultra vires the statute and regulations.

87. Even if there were a legal requirement that the geographical area be "contiguous", under the facts of this case, Hawai'i and California should be considered to meet any contiguity standards.

88. Plaintiffs have suffered significant harm from the improper denial of the I-924 Application.

## PRAYER FOR RELIEF

WHEREFORE, in view of the arguments and authority noted herein, Plaintiffs respectfully pray that the Defendants be cited to appear herein and that, upon due consideration, the Court enter an order:

(1)     Granting a Declaratory Judgment that Defendants' denial of Plaintiff's Application was erroneous, unlawful, and arbitrary and capricious;

(2)     Reversing the denial of Plaintiff's Application and approving said Application; and

(3)     Granting such other and further relief as this Court deems appropriate under the circumstances.

*[Remainder intentionally blank; signatures follow.]*

DATED: Kailua-Kona, Hawaiʻi, October 22, 2020

/s/ Jason R. Braswell
Jason R. Braswell
Terri L. Fujioka-Lilley
BRASWELL FUJIOKA-LILLEY LLP
75-127 Lunapule Road, Ste. 8B
Kailua-Kona, HI 96740
Telephone: (808) 345-7662

H. Ronald Klasko (*pro hac vice pending*)
Daniel B. Lundy (*pro hac vice pending*)
KLASKO IMMIGRATION LAW
PARTNERS, LLP
1601 Market Street, Suite 2600
Philadelphia, PA 19103
Telephone: (215) 825-8600

*Attorneys for Plaintiffs CALIFORNIA
ENERGY INVESTMENT CENTER, LLC and
HAWAII AGRICULTURE, ENERGY AND
EARTH PRODUCTS, LP*